# Exhibit A

## to Defendant eBay, Inc.'s Notice of Removal

 CT Corporation

**Service of Process Transmittal**
02/21/2017
CT Log Number 530731884

**TO:** Penny Sands
eBay, Inc.
2065 Hamilton Ave
San Jose, CA 95125-5904

**RE:** **Process Served in New York**

**FOR:** EBAY INC.  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Andrew D. West, Pltf. vs. Ebay, Inc., Dft. |
| **DOCUMENT(S) SERVED:** | Letter, Verified Complaint, Verification, Exhibit(s) |
| **COURT/AGENCY:** | Saratoga County: Supreme Court, NY<br>Case # 2017330 |
| **NATURE OF ACTION:** | Verified Complaint is served hereby |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, New York, NY |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 02/21/2017 postmarked: "Not Post Marked" |
| **JURISDICTION SERVED :** | New York |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | Gregory A. Mountain<br>The West Firm, PLLC<br>677 Broadway, 8th Floor<br>Albany, NY 12207<br>518-641-0500 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 02/22/2017, Expected Purge Date: 02/27/2017<br><br>Image SOP<br><br>Email Notification, ███████████ @ebay.com<br><br>Email Notification, ███████████ @ebay.com<br><br>Email Notification, ██████████ @ebay.com<br><br>Email Notification, ███████████ @EBAY.COM<br><br>Email Notification, ███████████ @ebay.com<br><br>Email Notification, ████████████ @ebay.com |
| **SIGNED:**<br>**ADDRESS:** | C T Corporation System<br>111 Eighth Avenue<br>13th Floor |

Page 1 of  2 / CB

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

 CT Corporation

**Service of Process
Transmittal**
02/21/2017
CT Log Number 530731884

**TO:**  Penny Sands
eBay, Inc.
2065 Hamilton Ave
San Jose, CA 95125-5904

**RE:**  **Process Served in New York**

**FOR:**  EBAY INC.  (Domestic State: DE)

**TELEPHONE:**  New York, NY 10011
212-590-9070

Page 2 of  2 / CB

Information displayed on this transmittal is for CT
Corporation's record keeping purposes only and is provided to
the recipient for quick reference. This information does not
constitute a legal opinion as to the nature of action, the
amount of damages, the answer date, or any information
contained in the documents themselves. Recipient is
responsible for interpreting said documents and for taking
appropriate action. Signatures on certified mail receipts
confirm receipt of package only, not contents.

DOS-470 (Rev. 10/03)

**DEPARTMENT OF STATE**
One Commerce Plaza
99 Washington Avenue
Albany, NY 12231-0001

Return Service Requested



**USPS CERTIFIED MAIL**

USPS CERTIFIED MAIL

9214 8969 0059 7936 3431 88

201702150523
C/O C T CORPORATION SYSTEM
111 EIGHTH AVENUE
NEW YORK NY, 10011

State of New York - Department of State
Division of Corporations

Party Served:                                    Plaintiff/Petitioner:
 EBAY INC.                                         WEST, ANDREW D


C/O C T CORPORATION SYSTEM
111 EIGHTH AVENUE
NEW YORK,  NY 10011


Dear Sir/Madam:
Enclosed herewith is a legal document which was served upon the Secretary of
State on 02/10/2017 pursuant to SECTION 306 OF THE BUSINESS CORPORATION LAW.
 This copy is being transmitted pursuant to such statute to the address
provided for such purpose.


                                                Very truly yours,
                                          Division of Corporations

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SARATOGA
_____

ANDREW D. WEST,

                                        Plaintiff,          **VERIFIED COMPLAINT**

      -against-
                                                            Index No. _____

EBAY, INC.

                                        Defendant.
_____

Plaintiff, ANDREW D. WEST ("West" or "Plaintiff"), by his attorneys, The West Firm,

PLLC, as and for its Verified Complaint against Defendant, EBAY, INC. ("Defendant"),

respectfully alleges as follows:

### NATURE OF ACTION

1.      The nature of this action is to recover damages from Defendant as a result of (i) a

breach by Defendant of an express confidentiality agreement and promise to compensate

Plaintiff in the event that Plaintiff's idea or work product was used by Defendant; and (ii) the

misappropriation of Plaintiff's idea and/or confidential business information and/or skill, labor

and work product.

### PARTIES

2.      Plaintiff Andrew D. West is domiciled in the State of New York with a mailing

address of ███████████████ Saratoga Springs, New York, 12866.

3.      Upon information and belief, Defendant is a Delaware corporation with offices at

2065 Hamilton Ave., San Jose, California, 95125 and is authorized to do business in New York

State.

2017212096205

**2017330**
02/09/2017 01:29:15 PM

FILED

INDEX NUMBERS
Saratoga County Clerk

## JURISDICTION & VENUE

4.      The Court has jurisdiction over this action pursuant to CPLR § 301.

5.      Venue is proper in this court pursuant to CPLR § 503.

## NATURE OF THE DISPUTE

6.      In or around 1997, West began providing valet services to sell items, such as skis and computers, in the virtual market place.

7.      Over the next thirteen (13) years, West developed various businesses, including but not limited to, US Ski Traders and auctionPAL, LLC, which provided various forms of assistance with selling items in the online marketplace and in a virtual auction environment.

8.      Through these businesses, West developed innovative methodologies to provide efficient and cost-effective valet services to individuals who desired to sell their belongings through an online marketplace.

9.      One of West's businesses, auctionPAL, LLC, handled the selling process from posting the item listing to shipping the item on the client's behalf through a "remote auction terminal," such as cellular telephones and free standing kiosks.

10.     Specifically, the business operated as follows:

      a.      A user sent a picture of their item to be sold through an agent, which can be defined as a mobile application, email or person, to the business for processing;

      b.      The business' technology, agent or personnel would interface with the user to ask the user questions about the item including, but not limited to information about the item, its condition and authenticity;

2

c. An employee, a selling agent who had specialized expertise regarding Defendant's market platform, would create, schedule and launch the auction on behalf of the user or process certain items to come to the central hub for processing and sale;

d. When the auction ended with a successful buyer, the business sent the buyer an invoice and collected the money through its secure payment processor;

e. Simultaneously, if the item was sold virtually instead of bringing the items in, the business sent the right sized box with a pre-printed shipping label to the user, delivered by DHL;

f. The user packed the item and called DHL for pick-up;

g. DHL picked up the box and deliver it to the buyer;

h. The business paid the user the proceeds of the sale, less a specified percentage of the purchase price; and

i. If the item did not sell, the business would relist or return the item and/or assist the user with donating it to a charity (hereinafter, the "Mobile Device Process").

11. West expended approximately thirteen (13) years of his life and was involved with the deployment of $3,000,000.00 in capital investment to develop the unique internal processes and business plan necessary to implement the Mobile Device Process.

12. These unique, internal processes include processes that analyzed the item's chance of sale using eBay's data, a proprietary custom question database as well as the best starting price and when to list the item for sale on the online marketplace.

3

13.     The processes were used by West's employees to screen, value and assist with auctioning the items that were proposed for sale by users. Notably, these processes were kept confidential and not publicly available.

14.     West drafted a business plan for the Mobile Device Process, which encompassed these unique, confidential internal processes (hereinafter, the "West Valet Plan").

15.     The West Valet Plan was kept confidential by West, as these processes provided a definitive competitive advantage to West in Defendant's market place.

16.     Upon information and belief, no other entity, including Defendant, was utilizing the processes and business model contained in the West Valet Plan.

17.     Specifically, the West Valet Plan provided a gateway to sellers in Defendant's marketplace.

18.     Upon information and belief, at the time of the implementation of the West Valet Plan, approximately only 8% of Defendant's users were sellers.

19.     After a few years of operation, however, West's business was shut down by Defendant, in or around 2010.

20.     Upon information and belief, no other entity (including Defendant) during the time West was utilizing the business model and thereafter was using the internal processes contained in the West Valet Plan to facilitate seller's listing items for sale in Defendant's marketplace.

21.     The West Valet Plan was kept and remained confidential as of the time West's business was shut down and thereafter.

22.     In 2011, West was hired by Defendant as a consultant for its fashion department.

4

23.     While providing consulting services to Defendant, West had multiple, in-depth conversations with Defendant's senior management employees regarding his prior business experiences selling items in the virtual marketplace, including Defendant's platform.

24.     Specifically, West had numerous, in-depth discussions with Defendant's Business Strategy and Program Manager, Jamie Dalton ("Dalton").

25.     During these discussions, Dalton advised West that Defendant was trying to develop applications to increase seller participation on Defendant's website.

26.     West, in turn, disclosed his previous experiences selling items in the virtual market place and provided Dalton with a general solution to increase seller participation on Defendant's website.

27.     Fascinated by West's prior business experiences, Dalton asked West to provide copies of his business plans.

28.     West was reluctant to provide any of his business plans at first.

29.     However, Dalton promised to keep any disclosed business plan in confidence and that it would not be acted upon without West's financial involvement or approval.

30.     In reliance on Dalton's express promise, West provided the West Valet Plan to Dalton.  Attached hereto as **Exhibit A** are emails between West and Dalton evidencing that Defendant was provided the West Valet Plan in confidence and that Defendant agreed to hold the information confidential and not use the information absent West's financial involvement in any project using the West Valet Plan, or any part thereof.

31.     More specifically, as demonstrated in the e-mail exchange in Exhibit A, West directed that if a project could be done utilizing the West Valet Plan "and [West] c[ould] be involved," then Dalton could hold on to the document, "[o]therwise DELETE."

5

32.     To this, Dalton responded, "Of course," and further stating that she wanted to pursue sharing the West Valet Plan with other in-house teams, with West being hired to work on the project to implement this "fascinating" and "brilliant" business model described in the West Valet Plan. *See* Exhibit A.

33.     Upon information and belief, at the time West divulged the West Valet Plan to Defendant in reliance on Dalton's express promise of confidentiality and financial involvement by West in any project utilizing the West Valet Plan, no entity (including Defendant) was utilizing the unique business model and processes in the West Valet Plan, thus demonstrating the novelty and originality of the West Valet Plan and the processes and business model described therein.

34.     Additionally, as evidenced in the emails in Exhibit A, Dalton found the West Valet Plan to be "fascinating," "interesting," and "brilliant;" therefore, the substance of and unique processes and business model described in the West Valet Plan were formerly unknown to Defendant and, likewise, of value to Defendant. *See* Exhibit A.

35.     Upon information and belief, Dalton wanted to share the West Valet Plan with other departments within Defendant's business and have those teams "work with" or "hire" West "to make it happen" – meaning implement the West Valet Plan for Defendant. *See* Exhibit A.

36.     Upon information and belief, Dalton's enthusiasm regarding the West Valet Plan prompted additional discussions, in which West disclosed variations of the business model described in the West Valet Plan.

37.     Specifically, West disclosed a business model wherein the customer would ship the item directly to the valet service.

6

38.   Specifically, the business model was as follows:

    a.   The client would send the qualified items directly to the valet service;

    b.   An employee of the valet service would evaluate the condition of the item and authenticate the same;

    c.   The employee of the valet service would then create, schedule and launch the auction on behalf of the client utilizing the internal processes that West developed;

    d.   When the auction ended with a successful buyer, the valet service sent the buyer an invoice and collected the money through its secure payment processor;

    e.   The valet service would then ship the item to the buyer upon receipt of payment;

    f.   The valet service paid the client the proceeds of the sale, less a specified percentage of the purchase price; and

    g.   If the item did not sell, the valet service would relist or return the item and/or assist the user with donating it to a charity.

39.   In addition, West also disclosed another variation of the business model called the spoke and hub model, which provided for a partnership with a shipping company with existing shipping infrastructure to allow the client to ship the item to the valet service with efficiency and relative ease.

7

40. This model was comprised of the following:

    a. The valet service would contract with a shipping company, such as FedEx or the USPS, UPS or FedEx, to have a drop off location at the shipping company's outlets;

    b. The client would drop off the qualified item(s) desired to be sold at one of the shipping company's outlets;

    c. The shipping company would then pack and ship the qualified item(s) to the valet service on behalf of the client;

    d. An employee of the valet service would evaluate the condition of the item and authenticate the same;

    e. The employee of the valet service would then create, schedule and launch the auction on behalf of the client utilizing the internal processes that West developed;

    f. When the auction ended with a successful buyer, the valet service sent the buyer an invoice and collected the money through its secure payment processor;

    g. The valet service would then ship the item to the buyer upon receiving payment;

    h. The valet service paid the client the proceeds of the sale, less a specified percentage of the purchase price; and

    i. If the item did not sell, the valet services would relist or return the item and/or assist the user with donating it to a charity ("Spoke and Hub Model").

41.     Notably, West had not implemented these models prior to disclosing same to Dalton.

42.     Upon information and belief, Dalton set up a meeting with one of Defendant's senior counsel and West regarding the West Valet Plan and the variations thereof as well as West's experiences providing virtual valet services to sellers on Defendant's website.

43.     Upon information and belief, during this meeting, West explained the West Valet Plan and variations thereof, which provided methodologies to increase seller participation on Defendant's website.

44.     Upon information and belief, this meeting lasted approximately one and one-half (1.5) hours and upon conclusion of the meeting, the senior counsel reassured West that the West Valet Plan and the information disclosed during the meeting would not be acted upon or used by Defendant without West's involvement, including compensation to West.

45.     In reliance on these further assurances, West did not take additional measures to protect the West Valet Plan or the variations thereof from disclosure within Defendant's organization.

46.     Upon information and belief, Defendant launched a new mobile application called "eBay Valet" in June, 2014.   Attached hereto as **Exhibit B** is a copy of Defendant's press release, dated June 17, 2014, which describes the mobile application.

47.     Upon information and belief, Defendant, in bad faith, utilized the Mobile Device Process contained in the West Valet Plan to develop eBay Valet.

48.     Upon information and belief, eBay Valet is based on the Mobile Device Process.

49. Upon information and belief, eBay Valet operates as follows:

   a. A user takes a picture of the item with his/her mobile phone;

   b. The user sends the picture using Defendant's mobile application to an employee of Defendant called a "eBay Valet" to sell his or her products;

   c. The eBay Valet generates a FedEx shipping label if the user is using his/her own box and emails the same to the user or the eBay Valet provides the user with a pre-paid box;

   d. The user packs and ships the item using the generated shipping label or prepaid box to eBay Valet;

   e. Upon receipt, eBay Valet employees, who are selling experts, will evaluate the items and determine pricing based on eBay's trending pricing;

   f. Each item will be listed for sale for 60 days;

   g. If the item sells, eBay Valet will receive a specified percentage of the purchase price and the user will receive the remaining balance; and

   h. If the item does not sell within the 60-day period, eBay Valet will return the item to the user.

50. Upon information and belief, eBay Valet mimics the Mobile Device Process and variations of the model described by West to Defendant's employees.

51. Upon information and belief, Defendant breached its confidentiality agreement with West by using the Mobile Device Process described in the West Valet Plan without compensating West or involving West in eBay Valet.

52.     West sent a letter, dated October 10, 2014, to Defendant to cease and desist from engaging in unfair competition as a result of the bad-faith misappropriation of his ideas and the West Valet Plan.  Attached hereto as **Exhibit C** is a copy of the letter.

53.     Defendant responded to West by letter, dated November 24, 2014, in which Defendant alleges that eBay Valet was independently conceived by Defendant employees that were not affiliated with or know West, or have not reviewed the West Valet Plan.  Attached hereto as **Exhibit D** is a copy of Defendant's letter.

54.     Upon information and belief, Defendant continues to operate eBay Valet to date.

55.     Upon information and belief, Defendant has expanded on the eBay Valet business model utilizing the Spoke and Hub Model West disclosed to Defendant's employees.

56.     Notably, on or about May 10, 2016, eBay partnered with FedEx to create drop off locations at FedEx outlets for eBay Valet.  Attached hereto as **Exhibit E** is a press release, dated May 10, 2016, wherein Defendant announces its partnership with FedEx.

57.     In this variation of eBay Valet, customers will be able to bring in item(s) to a FedEx Office location where a FedEx employee will pack and ship the item(s) to an eBay Valet processing center to be listed, sold and shipped to the buyer.

58.     Once the item(s) sells, the customer will receive payment via PayPal.

59.     Upon information and belief, this is model mimics the Spoke and Hub Model that West disclosed to Defendant.

60.     Upon information belief, Defendant breached its confidentiality agreement with West by using the information West disclosed to Defendant without compensating West or involving West in eBay Valet.

11

61.     West has been deprived the use of the West Valet Plan and the business model variations disclosed to Defendant and has been damaged as a result in the amount of not less than $25,000,000.00.

## AS AND FOR A FIRST CAUSE OF ACTION
## BREACH OF CONTRACT/SUBMISSION & UNAUTHORIZEDUSE OF IDEA

62.     West repeats and realleges each and every allegation contained in Paragraphs 1 through 61, inclusive, with the same force and effect as though fully set forth herein at length.

63.     Defendant, through its employees, including Dalton, entered in the confidentiality agreement with West to keep the West Valet Plan and the disclosed business model variations confidential and not use the processes and models without West's approval and financial involvement. *See* Exhibit A.

64.     The internal processes and business models were novel and of value to the Defendant, as evidenced by Dalton's reaction to the West Valet Plan, as being "brilliant" and "fascinating." *See* Exhibit A.  This reaction is confirmatory given her extensive background in customer service & trust and safety which all focused on these areas of business.  She was very familiar with the strategic business plans of eBay past and present through such experience.

65.     The information disclosed by West was novel and original in that it was of specific application that was not being used in the industry/marketplace prior to Defendant's implementation of it.

66.     In launching and continuing to operate eBay Valet, Defendant, in bad faith, breached the confidentiality agreement by using the unique, novel and valuable ideas of West without West's approval or financial involvement.

12

67.     Consequently, West was deprived the use of his unique, novel and valuable ideas in the West Valet Plan and disclosed variations thereof or marketing these ideas for other business opportunities and associated profits therefrom.

68.     Therefore, West has been damaged, in an amount not less than $25,000,000.00.

## AS AND FOR A SECOND CAUSE OF ACTION
## MISAPPROPRIATION OF PROPERTY:  MISAPPROPRIATION OF IDEA

69.     West repeats and realleges each and every allegation contained in Paragraphs 1 through 68, inclusive, with the same force and effect as though fully set forth herein at length.

70.     West was employed by Defendant as a consultant.

71.     West disclosed the West Valet Plan and variations thereof to Defendant in confidence, in reliance on Defendant's employee's express promises of confidentiality and agreement to not use the disclosed information without West's approval and financial involvement.

72.     Defendant agreed not to use the disclosed information without West's involvement and compensation.

73.     The West Valet Plan included unique, internal processes that were not known to the general public.

74.     Specifically, the West Valet Plan provided a gateway to sellers in Defendant's marketplace.

75.     Upon information and belief, at the time of approximately only 8% of Defendant's users were sellers.

76.     Upon information and belief, the internal processes in the West Valet Plan were novel, as they were not used by other entities at this time, including Defendant.

13

77.     Defendant gave West repeated verbal and written assurances that the West Valet Plan and disclosed variations thereof would be kept confidential and not implemented by Defendant absent West's financial involvement or approval.

78.     Defendant acted in bad faith when it violated these repeated assurances of confidentiality and financial remuneration to West.

79.     Upon information and belief, Defendant misappropriated the West Valet Plan and variations thereof by forming and developing eBay Valet to operate the same business and provide the same service as disclosed by West.

80.     As a result, West has been deprived of use of his novel idea or marketing the West Valet Plan and variations thereof for other business opportunities and the potential profits therefrom.

81.     Therefore, West has been damaged in the amount of not less than $25,000,000.00.

## AS AND FOR A THIRD CAUSE OF ACTION
## UNFAIR COMPETITION: MISAPPROPRIATION OF LABOR, SKILL & EXPENDITURE

82.     West repeats and realleges each and every allegation contained in Paragraphs 1 through 81, inclusive, with the same force and effect as though fully set forth herein at length.

83.     West expended approximately thirteen (13) years and was involved with the deployment of approximately $3,000,000.00 in investment capital to develop the unique, internal processes in the West Valet Plan.

84.     West drafted the West Valet Plan, which encompassed these unique, confidential internal processes.

85.     Upon information and belief, these internal processes were unique and novel, as there were no other entities (including Defendant) utilizing the Mobile Device Process or the Spoke and Hub Model in the virtual market place.

86.     West disclosed the West Valet Plan and variations thereof to Defendant in confidence while being employed by Defendant as a consultant, in reliance on repeated assurances by Defendant that the information contained therein would be kept confidential and would not be used absent West's involvement and financial compensation in any project utilizing the disclosed information.

87.     Defendant agreed not use the disclosed information without West's involvement and compensation.

88.     Upon information and belief, Defendant acted in bad faith when it broke this agreement and misappropriated West's labor, skill and expenditures by utilizing the disclosed information to form and develop eBay Valet to operate the same business and provide the same service as disclosed by West.

89.     As a result, West has been deprived of the value of his time, expenditure and his work product contained in the West Valet Plan and variations thereof or marketing the West Valet Plan for other business opportunities and the potential profits therefrom.

90.     Therefore, West has been damaged in the amount of not less than $25,000,000.00.

### AS AND FOR A FOURTH CAUSE OF ACTION
### PROMISSORY ESTOPPEL

91.     West repeats and realleges each and every allegation contained in Paragraphs 1 through 90, inclusive, with the same force and effect as though fully set forth herein at length.

92.     West divulged the West Valet Plan and variations thereof to Defendant in strict confidence and in reliance on Defendant's clear, unambiguous promise that the disclosed

information would be kept confidential and would not be utilized without West's involvement and compensation to West. *See* Exhibit A.

93.    Defendant agreed and promised to West that Defendant would not utilize such information without West being involved and without compensation to West.

94.    West relied on Defendant's promise and explicit agreement to his detriment, as he did not take additional measures to protect the West Valet Plan or the variations thereof disclosed to Defendant and the internal processes therein from disclosure within Defendant's organization.

95.    Upon information and belief, Defendant acted in bad faith by breaking its promise and agreement to West by utilizing the disclosed information to form and develop eBay Valet to operate the same business and provide the same services as disclosed by West.

96.    As a result, West has been unconscionably deprived of use of his novel ideas and his work product, amounting to a time expenditure of over thirteen (13) years of his life, and the deployment of more than $3,000,000.00 in investment capital, and the business opportunity and profits associated with implementation of the West's disclosed information.

97.    Therefore, West has been damaged in the amount of not less than $25,000,000.00.

## AS AND FOR A FIFTH CAUSE OF ACTION
## UNJUST ENRICHMENT

98.    West repeats and realleges each and every allegation contained in Paragraphs 1 through 97, inclusive, with the same force and effect as though fully set forth herein at length.

99.    West provided Defendant the West Valet Plan and variations thereof in strict confidence and in reliance on Defendant's express promise and repeated assurances that the

disclosed information would not be utilized without West's involvement and financial compensation.

100.    Defendant agreed and promised to West that Defendant would not utilize the disclosed information without West being involved and receiving compensation.

101.    Upon information and belief, Defendant acted in bad faith by utilizing the disclosed information without West's permission and benefitted therefrom by forming and developing eBay Valet and operate the same business and provide the same services as disclosed by West .

102.    Upon information and belief, Defendant benefitted at the expense of West's thirteen (13) years and the deployment of approximately $3,000,000.00 in investment capital to develop the internal processes in the West Valet Plan and variations thereof.

103.    As a result, West has been unconscionably deprived of the use of his novel ideas, unique business plans, and ultimate work product, amounting to a time expenditure of at least thirteen (13) years of his life, and the deployment of more than $3,000,000.00 in investment capital or the marketing of the West Valet Plan and variations thereof for other business opportunities and the potential profits therefrom.

104.    Defendant has been unjustly enriched at West's expense by eliminating West's ability to market what once was, but no longer is, a novel, original, unique ideas disclosed to Defendant and pursue business opportunities and profits therefrom.

105.    Equity and good conscience require Defendant to pay restitution in the amount not less than $25,000,000.00. to West.

17

**WHEREFORE,** West demands judgment in his favor and against Defendant in the sum not less than $25,000,000.00., plus interest, late fees and costs, together with costs and disbursements of this action, and for such other and further relief as the Court may deem just and proper.

Dated:   February 8, 2017             THE WEST FIRM, PLLC
         Albany, New York

                              By:     _____
                                      Gregory A. Mountain., Esq.
                                      *Attorneys for Plaintiff*
                                      *Andrew D. West*
                                      677 Broadway, 8th Floor
                                      Albany, New York 12207
                                      Tel: (518) 641-0500
                                      gam@westfirmlaw.com

## VERIFICATION

STATE OF NEW YORK    )
                         ) ss:
COUNTY OF SARATOGA  )

      **Andrew D. West**, being duly sworn, states that he is the Plaintiff, in this action and that the foregoing is true to his own knowledge, except as to matters therein stated on information and belief and as to those matters he believes them to be true.

                                                           Andrew D. West

Sworn to before me this
4th day of February, 2017

                                    Notary Public

THERESA M. KACZOR
Notary Public, State of New York
No. 01KA6332465
Qualified in Schenectady County
Commission Expires November 2, 20_19_

**Theresa Kaczor**

| | |
|---|---|
| **From:** | Drew West <█████████@gmail.com> |
| **Sent:** | Monday, October 06, 2014 6:40 PM |
| **To:** | Mark Wagner |
| **Subject:** | Fwd: auctionPAL |

---------- Forwarded message ----------
From: **Drew West** <█████████@gmail.com>
Date: Mon, Jun 23, 2014 at 11:32 AM
Subject: Fwd: auctionPAL
To: "West, Thomas" <twest@westfirmlaw.com>

---------- Forwarded message ----------
From: **Dalton, Jamie** <████████@ebay.com>
Date: Mon, Feb 13, 2012 at 12:21 PM
Subject: RE: auctionPAL
To: Drew West <█████████@gmail.com>

Of course.

Part of me wants to send it to the Mobile team and tell them to work with you to make it happen.

The other part of me wants to send it to the C2C team and tell them to hire you.

I think it's fascinating and you and your brother did a brilliant job.

I just don't want to delete it until I know it's absolutely not possible to make it happen.

---

**From:** Drew West [mailto:█████████@gmail.com]
**Sent:** Monday, February 13, 2012 10:18 AM

**To:** Dalton, Jamie
**Subject:** Re: auctionPAL

1

Hmmm...if we can do a project with it and I can be involved!  Otherwise DELETE ;)

On Mon, Feb 13, 2012 at 12:15 PM, Dalton, Jamie <█████@ebay.com> wrote:

Hmmm.... Interesting.


can I keep it?

---

**From:** Drew West [mailto:████████@gmail.com]
**Sent:** Monday, February 13, 2012 10:11 AM
**To:** Dalton, Jamie
**Subject:** Re: auctionPAL


VERO

On Mon, Feb 13, 2012 at 1:33 AM, Dalton, Jamie <█████@ebay.com> wrote:

Fascinating.

Remind me why this didn't work?



On Feb 12, 2012, at 8:20 PM, "Drew West" <████████@gmail.com> wrote:

> Maybe this will help me learn
>
>
>

> <BusinesPlan_070103.pdf>

Jun 17, 2014

Share on FacebookShare on TwitterShare on LinkedInShare on other services

# eBay Valet App Makes It Easier Than Ever to Sell

By: eBay Inc. Staff



Our company's commitment to innovation in mobile technology is driving us closer and closer to zero-effort commerce. With our new eBay Valet app pilot, we're making it even easier to sell on our marketplace by using a device that's always within reach – the mobile phone.

"This is going to be the fastest, most frictionless way in eBay history that someone is able to sell an item and collect money," said Steve Yankovich, eBay's Vice President of Innovation and New Ventures.

With the eBay Valet App, find your items' worth, send them in and valets take care of selling them for you on eBay. It is a new and simple way to sell your stuff on eBay. The eBay Valet app's goal is to target new or less frequent sellers at just the right moment.

"This is a chance to pull in people who have never sold on eBay, period, and who maybe are not even eBayers," Yankovich said. "It's for people who think selling currently has too much friction. Why wouldn't you do this?"

Here's how it works:

- Take a picture of an item you'd like to sell with your phone.
- Use the app to send the photo to a valet.
- In as little as 30 minutes, the valet will respond within the app with a valuation range for the item and you'll be asked if you want to sell it.
- If you have a box handy that you'd like to recycle, print a label and send it off to the valet. If not, we'll send you a free prepaid box.
- Once the item sells – typically in a seven-day listing – your payment will show up in your PayPal account.

"Even though you're not selling the item, there's still an experience of selling," Yankovich said. "You get to experience the listing but do none of the work."

Valets will handle everything to successfully sell customers' items, including:

- Taking professional photos
- Writing detailed listings of the items on eBay
- Answering questions from buyers
- Quickly and safely shipping items
- Sending payment via PayPal once items sell

The Valet app was designed and developed by the IIC (Israel Innovation Center), a unit within the Innovation and New Ventures organization based in Tel-Aviv and chartered with rapid prototyping for eBay Inc.

We believe the eBay Valet app holds a great deal of promise in taking mobile commerce to the next level.

TOPIC: Innovation

Exhibit C



THE **WEST FIRM**
A PROFESSIONAL LIMITED LIABILITY COMPANY

**Thomas S. West**
Direct Dial: (518) 641-0501
Direct Facsimile: (518) 615-1501
E-Mail: twest@westfirmlaw.com
*Admitted in New York and Pennsylvania*

October 10, 2014

***VIA FEDERAL EXPRESS***

Mr. Michael R. Jacobson
General Counsel
eBay, Inc.
Whitman Campus
2065 Hamilton Avenue
San Jose, California 95125

RE:    **Andrew D. West and Thomas D. West Misappropriation Claim**

Dear Mr. Jacobson:

We represent Andrew D. West and Thomas D. West (the "Inventors"), who founded auctionPAL, LLC ("auctionPAL"), in connection with the above referenced matter.

This letter shall serve as a formal demand on behalf of the Inventors that eBay, Inc. ("eBay") cease and desist from engaging in unfair competition as a result of the bad-faith misappropriation of the Inventors' trade secrets, including but not limited to its business plan and other confidential information. *See Saratoga Viche Spring Co. v. Lehman,* 625 F.2d 1037, 1044 (2d Cir. 1980) (stating the essence of an unfair competition claim under New York law is that the defendant has misappropriated the labors and expenditures of another); *see also Support Sys. Assocs. v. Tavolacci,* 135 A.D.2d 704, 705-06 (2d Dep't 1987) (asserting that information like business plans were confidential information and entitled to trade secret protection).

In or around 2007, auctionPAL contracted with third parties to sell their items on eBay. AuctionPAL handled the whole process from posting the listing to shipping the item on the third party's behalf. Specifically, an auctionPAL user would take a picture of the item, auctionPaL would then list the item, communicate with potential buyers and provide a box with a preprinted label with the buyer's information for shipping. However, within a few years of operation, auctionPAL was shut down by eBay by reason of putative claims associated with the inability of customers of auctionPAL to prove the authenticity of certain merchandise.

We would like to draw your attention to the fact that in 2011, one of the Inventors, Andrew D. West, was hired by eBay as a consultant for its fashion department. While providing consulting services to eBay, Mr. West had conversations with eBay employees regarding his prior business, auctionPAL, which resulted in Mr. West providing auctionPAL's business plan to an eBay employee, Jamie Dalton, on a privileged and confidential basis. Emails between Mr. West and Mr. Dalton are attached hereto evidencing that eBay was provided auctionPAL's business plan in confidence.

Attorneys and Counselors at Law
677 Broadway 8th Floor, Albany, NY 12207-2996
Office: (518) 641-0500 Fax: (518) 615-1500 www.westfirmlaw.com

Mr. Michael R. Jacobson
October 10, 2014
Page 2

EBay has subsequently misappropriated the auctionPal business plan and launched eBay valet, which will make it easier to sell items on eBay by implementing material portions of the auctionPal business plan. EBay valet provides the same exact services as auctionPAL. EBay valet users take photos of the item, upon which the company will estimate the resale value, communicate with potential buyers in addition to providing a prepaid box to ship the goods, exactly as depicted in the auctionPAL business plan.

Based on the foregoing, eBay has unfairly competed with auctionPAL by deliberately putting it out of business and, subsequently, misappropriating the business plan to create eBay valet. Therefore, the Inventors are hereby demanding that eBay cease-and-desist from launching and implementing eBay valet, without proper authorization from the Inventors. Additionally, we hereby demand that eBay respond within thirty (30) days from the date of this letter concerning eBay's intentions regarding this issue. If we do not receive a response within the stated time, we will presume eBay does not intend to resolve this situation amicably and will seek alternative avenues of recovery for auctionPAL's damages.

Thank you for your attention to this demand.

THE WEST FIRM, PLLC

Thomas S. West

TSW/mjw
Enclosure
cc:   Andrew D. West
      Thomas D. West

From:            Drew West [███████@gmail.com]
Sent:            Monday, October 06, 2014 6:40 PM
To:               Mark Wagner
Subject:         Fwd: auctionPAL

---------- Forwarded message ----------
From: **Drew West** <███████@gmail.com>
Date: Mon, Jun 23, 2014 at 11:32 AM
Subject: Fwd: auctionPAL
To: "West, Thomas" <twest@westfirmlaw.com>

---------- Forwarded message ----------
From: **Dalton, Jamie** <███████@ebay.com>
Date: Mon, Feb 13, 2012 at 12:21 PM
Subject: RE: auctionPAL
To: Drew West <███████@gmail.com>

Of course.

Part of me wants to send it to the Mobile team and tell them to work with you to make it happen.

The other part of me wants to send it to the C2C team and tell them to hire you.

I think it's fascinating and you and your brother did a brilliant job.

I just don't want to delete it until I know it's absolutely not possible to make it happen.

**From:** Drew West [mailto:███████@gmail.com]
**Sent:** Monday, February 13, 2012 10:18 AM

**To:** Dalton, Jamie
**Subject:** Re: auctionPAL

1

Hmmm...if we can do a project with it and I can be involved!  Otherwise DELETE ;)

On Mon, Feb 13, 2012 at 12:15 PM, Dalton, Jamie <███@ebay.com> wrote:

Hmmm.... Interesting.


can I keep it?


**From:** Drew West [mailto:███████@gmail.com]
**Sent:** Monday, February 13, 2012 10:11 AM
**To:** Dalton, Jamie
**Subject:** Re: auctionPAL


VERO

On Mon, Feb 13, 2012 at 1:33 AM, Dalton, Jamie <███@ebay.com> wrote:

Fascinating.

Remind me why this didn't work?



On Feb 12, 2012, at 8:20 PM, "Drew West" <███████@gmail.com> wrote:

> Maybe this will help me learn
>
>
>

> <BusinesPlan_070103.pdf>

Exhibit D



*eBay Inc.*

*2065 Hamilton Avenue*

*San Jose, CA 95125*

**VIA FEDERAL EXPRESS AND ELECTRONIC MAIL**

November 7th, 2014

Thomas S. West, Esq.
The West Firm, PLLC
Attorneys and Counselors at Law
677 Broadway 8th Floor
Albany, NY 12207-2996
twest@westfirmlaw.com

Dear Mr. West:

I write in response to your letter of October 10th addressed to eBay Inc.'s General Counsel.

I am sorry for the delayed reply, but I was just provided with your letter and assigned to handle this issue.

In response to your letter, we want to assure you that eBay Inc. ("eBay") respects the intellectual property rights of third parties, and has a long track-record in this area, including the dedication of significant resources to its VeRO program.

We are diligently investigating the allegations in your letter now, and anticipate providing a more complete response to your letter by Friday Nov. 21st.

Sincerely,

Rory Bens

Rory Bens
Associate General Counsel, Technology & Patent Law

May 10, 2016

<u>Share on FacebookShare on TwitterShare on LinkedInShare on other services</u>

# eBay and FedEx Office Streamline Online Consumer Selling

Press Release

**eBay Valet Drop-Off Program Expands to More Than 1,600 FedEx Office Locations.**



eBay and FedEx Office are making it easier for consumers to sell items online and earn money. Building on the success of the <u>eBay Valet</u> program – a professional service that handles all aspects of the selling process for the customer – eBay and FedEx Office are teaming up to offer the <u>eBay Valet Drop-Off Program</u> available at more than 1,600 FedEx Office stores over the coming months.

**eBay and FedEx Office Offer Ease and Flexibility**

The eBay Valet Drop-Off Program is designed to make selling items as easy and turnkey as possible. Customers will be able to sell items with eBay Valet in three easy steps. First, customers will be able to bring in items to a FedEx Office location. Next, backed by the FedEx Office® Packing Pledge, a FedEx Office team member will pack and ship the item(s) to an eBay Valet processing center to be listed, sold and shipped to the buyer. Finally, once the item(s) sells, the customer will receive payment via PayPal. Customers will receive updates and notifications throughout the selling process.

"As a pioneer in peer-to-peer selling, eBay understands that ease and flexibility are critical for consumers looking to sell online. That's why we're investing in solutions and offerings that streamline every stage of the selling process – from listing, to shipping, to successful sales," said Laura Chambers, Vice President of Consumer Selling, eBay. "Our relationship with FedEx Office allows us to offer even more choices to consumers looking to get the most money for their items with the least amount of work … and the peace of mind it will arrive safely."

As one of the world's largest marketplaces – connecting more than 162 million active buyers to sellers from around the world – eBay offers significant reach for those looking to sell their goods. Whether it is mailing or dropping off goods through the eBay Valet Drop-Off Program, or listing items directly to the marketplace, eBay offers a wide range of choices to meet the personal needs of sellers.

"FedEx Office continues to look for ideas and solutions that help our customers be efficient and save time and money," said Jeff Heyman, Vice President, Retail & Supply Chain, FedEx Office. "Working with eBay reaffirms our commitment to innovation and we are excited about the possibilities this program provides consumers looking to make money from selling online."

The eBay Valet Drop-Off Program accepts items from a number of different product categories. Items that sell best include electronics, antiques and collectibles, high-end clothing and shoes, and small appliances. Through the eBay Valet Drop-Off Program, consumers can even sell bulky items – like golf clubs – alleviating the hassle of packing them up.

FedEx Office & eBay Valet Drop-Off Pilot Program Findings

- The majority of customers participating in the pilot (Atlanta/Los Angeles) were new to selling on eBay
- Top selling categories include electronics, high-end clothing and shoes, small appliances, antiques
- One of the most interesting items sold through the pilot was a unique set of silver dollar coins, which sold for over $2,900

*About eBay*

*eBay Inc. (NASDAQ: EBAY) is a global commerce leader including the Marketplace, StubHub and Classifieds platforms. Collectively, we connect millions of buyers and sellers around the world, empowering people and creating opportunity through Connected Commerce. Founded in 1995 in San Jose, California, eBay is one of the world's largest and most vibrant marketplaces for discovering great value and unique selection. In 2015, eBay enabled $82 billion of gross merchandise volume. For more information about the company and its global portfolio of online brands, visit www.ebayinc.com.*

*About FedEx Office*

*FedEx Office has more than 1,800 stores and locations in the U.S. and Canada, providing convenient access to printing and shipping expertise with reliable service. The company's network features retail stores, centralized production centers, corporate on-site print centers, and on-site business centers at hotels, convention centers and universities. Services include digital printing, professional finishing, document creation, direct mail, signs and graphics, copying, computer rental, free Wi-Fi and corporate print solutions. In addition, the company offers FedEx Express® and FedEx Ground® shipping, Hold at FedEx Location, and packing services backed by the FedEx® Packing Pledge. For more information, please visit fedex.com/office.*

TOPICS: Announcements, Customers

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF SARATOGA**

HIRAM HOLLOW REGENERATION CORP.,

                                                Plaintiff,

    -against-                                                              Index No. 20161111

WILLIAM M. DONER II D/B/A JP TRUCKING,

                                                Defendant.

# VERIFIED COMPLAINT



# THE WEST FIRM
A PROFESSIONAL LIMITED LIABILITY COMPANY
**Attorneys and Counselors At Law**
677 Broadway, 8th Floor
Albany, New York 12207-2996
Telephone (518) 641-0500
Facsimile (518) 615-1500