**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ANDREW D. WEST,**

                                         **Plaintiff,**

    vs.                                                                                                  **1:17-cv-285**
                                                                            **(MAD/CFH)**

**EBAY, INC.,**

                                         **Defendant.**
_____

**APPEARANCES:**                                                          **OF COUNSEL:**

**THE WEST FIRM, PLLC**                                          **GREGORY ALYN MOUNTAIN, ESQ.**
677 Broadway                                                               **THOMAS S. WEST, ESQ.**
8th Floor
Albany, New York 12207
Attorneys for Plaintiff

**QUINN, EMANUEL LAW FIRM**                           **CORY DANIEL STRUBLE, ESQ.**
51 Madison Avenue
22nd Floor
New York, New York 10010
Attorneys for Defendant

**QUINN, EMANUEL LAW FIRM**                           **DAVID M. GRABLE, ESQ.**
865 South Figueroa Street
10th Floor
Los Angeles, California 90017
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On February 8, 2017, Plaintiff Andrew D. West ("Plaintiff" or "West") filed a complaint in New York State Supreme Court, Saratoga County, alleging causes of action for breach of contract, misappropriation of property, unfair competition, promissory estoppel, and unjust enrichment. *See* Dkt. No. 2 at 1. On March 13, 2017, Defendant eBay, Inc. ("Defendant" or

"eBay") removed the action to this Court pursuant to 28 U.S.C. § 1446, asserting jurisdiction pursuant to 28 U.S.C. § 1332(a) by virtue of the fact that complete diversity exists between the parties and the amount in controversy exceeds $75,000. *See* Dkt. No. 1.

Currently before the Court is Defendant's motion to dismiss. For the following reasons, the motion is denied.

## II. BACKGROUND

An internet auction valet ("valet") is a service that simplifies the process for sellers on virtual marketplaces. *See* Dkt. No. 2 at ¶¶ 6, 9. A valet service operates as follows: a seller photographs an item that they would like to sell; the seller sends the photograph to the valet service; the valet services responds with an estimate of what the item will sell for at auction; if the seller wishes to proceed, the valet provides the seller with the means for the seller to ship the item to the valet; the valet will list the item on an auction website and provide value added services such as taking professional photos, writing a description, and answering questions from buyers; finally, if the item sells, the valet will ship the item to the buyer and pay the seller. *See id.* at ¶ 10; *id.* at 25.

In or around 1997, Plaintiff began providing valet services. *See id.* at ¶ 6. He developed various businesses, including but not limited to, US Ski Traders and auctionPAL, LLC, which provided auction valet services. *See id.* at ¶¶ 6, 8-9, 12, 19. Over the next thirteen years, Plaintiff's companies spent approximately $3 million to "develop the . . . internal processes and business plan" for his valet service. *Id.* at ¶ 11.

In 2007, auctionPAL, LLC ("auctionPAL") entered into an agreement with Defendant to use Defendant's auction site to facilitate auctionPAL's valet service. *Id.* at 27. In 2010, Defendant stopped Plaintiff from using its auction website due to their concerns that

auctionPAL's customers were unable to prove the authenticity of certain merchandise. *See id.*; *id.* at ¶ 19. "In 2011, [Plaintiff] was hired by Defendant as a consultant for its fashion department." *Id.* at ¶ 22.

In the course of providing consulting services, Plaintiff had multiple discussions with Defendant's Business Strategy and Program Manager, Jamie Dalton ("Dalton"). *See id.* at ¶¶ 23-24. Dalton told Plaintiff that "Defendant was trying to develop applications to increase seller participation on Defendant's website." *Id.* at ¶ 22. Plaintiff told Dalton of about his "prior business experiences selling items in the virtual marketplace, including Defendant's platform" and "provided Dalton with a general solution to increase seller participation on Defendant's website." *Id.* at ¶¶ 23-24, 26. Dalton asked Plaintiff to provide him with copies of his business plan (the "West Plan"). *Id.* at ¶ 27. The West Plan was comprised of the valet service described *supra*, a plan for a remote terminal for the valet service ("Mobile Device Process"), a "spoke and hub model, which provided for a partnership with a shipping company with existing shipping infrastructure to allow the client to ship the item to the valet service with efficiency and relative ease," as well as previously undisclosed proprietary questions and market research on optimal listing parameters. *Id.* at ¶¶ 11, 38-39. According to Plaintiff, "no other entity (including Defendant) was utilizing [Plaintiff's] unique business model" at that time. *Id.* at ¶ 33. Even Plaintiff "had not implemented these models prior to disclosing" them to Dalton. *Id.* at ¶ 41.

Plaintiff was reluctant to provide Dalton with these documents. *See id.* at ¶ 28. Dalton promised Plaintiff that he would "keep any disclosed business plan in confidence and that it would not be acted upon without West's financial involvement or approval." *Id.* at ¶ 29. This promise induced Plaintiff to send Dalton his business plans via email. *Id.* at ¶ 30.

During the subsequent email exchange, Dalton asked Plaintiff if he could keep the business plan. *See id.* at 22. Plaintiff responded, "[h]mmm...if [sic] we can do a project with it and I can be involved! Otherwise DELETE ;)." *Id.* Dalton agreed, stating "[o]f course" and indicated that Plaintiff did a "brilliant job" and that he did not want to delete the plan until he knew that a deal was "absolutely not possible." *Id.* at 21.

As a result of the disclosure, Dalton arranged a meeting between Plaintiff and one of Defendant's senior counsel regarding Plaintiff's business plan. *Id.* at ¶¶ 41-45. According to Plaintiff, at the conclusion of the ninety minute meeting, Defendant's counsel assured Plaintiff that the information disclosed during the meeting would not be acted upon without compensating and involving Plaintiff. *See id.* at ¶ 44.

In June 2014, Defendant launched a mobile application called "eBay Valet." *Id.* at ¶ 46. According to Plaintiff, Defendant used the West Plan to develop their service, which "mimics the West Plan and the variations of the model described by [Plaintiff] to Defendant's employees." *Id.* at ¶¶ 47, 50. On October 10, 2014, Plaintiff sent Defendant a letter directing it to "cease and desist from engaging in unfair competition as a result of the bad-faith misappropriation" of Defendant's business plan. *Id.* at ¶ 52. On November 24, 2014, Defendant responded that the "eBay Valet was independently conceived" of by employees who had no connection to Plaintiff. *Id.* at ¶ 53. On May 10, 2016, Defendant partnered with FedEx, a partnership that Plaintiff believes mimics his previously undisclosed idea for a hub and spoke model. *Id.* at ¶ 56.

Currently before the Court is Defendant's motion to dismiss.

### III. DISCUSSION

**A.    Standard of Review**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief,"

5

*Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[] complaint must be dismissed[,]" *id.* at 570.

**B.     Choice of Law**

In its motion to dismiss, Defendant contends that New York law should apply to Plaintiff's claims, while Plaintiff argues that California law applies.  Under New York's conflict-of-law analysis, courts in contract cases employ the "center of gravity" approach, which includes consideration of the place of the transaction, the location of the subject matter at issue, the place of the defendant's performance or failure to perform, and the domicile or place of business of the contracting parties.  *See Matter of Allstate Ins. Co. (Stolarz)*, 81 N.Y.2d 219, 226 (1993).  For tort cases, New York courts typically apply "interest analysis," where the policies underlying the competing laws are considered in determining which states' laws are to be applied.  *See id.* (citations omitted).

Considering the fact intensive nature of this inquiry, courts have regularly held that a detailed choice-of-law determination would be premature on a motion to dismiss.  *See Speedmark Transp., Inc. v. Mui*, 778 F. Supp. 2d 439, 444 (S.D.N.Y. 2011) (citing cases).  Moreover, as discussed below, Plaintiff's breach of contract claim survives under both New York and California law.  As such, because Plaintiff's remaining claims closely track the breach of contract claims and are not likely to significantly expand discovery, the Court declines to engage in a choice of law analysis at this time.  *See id.* (citations omitted).

**C.     Breach of Contract**

Under New York law, to state a claim for breach of contract, a plaintiff must allege the following elements: (i) the existence of a contract; (ii) adequate performance of the contract by the plaintiff; (iii) breach by the other party; and (iv) damages suffered as a result of the breach.

*See Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996) (citation omitted); *see also Wolff v. Rare Medium, Inc.*, 171 F. Supp. 2d 354, 357-58 (S.D.N.Y. 2001) (citation omitted). "In pleading these elements, a plaintiff must identify what provisions of the contract were breached as a result of the acts at issue." *Wolff*, 171 F. Supp. 2d at 358 (citation omitted).

Defendant argues that the pleadings fail to state sufficient facts necessary to establish an enforceable contract because they fail to allege that (1) the business plan was adequate consideration, and (2) Plaintiff and Defendant mutually assented to material terms.

### *1. Adequacy of the Consideration*

Defendant argues that the business plan did not constitute adequate consideration because it was not "novel" and thus had no value. Defendant argues lack of novelty is fatal to any cause of action arising out of the idea's unlawful use. *See* Dkt. No. 17-1 at 18 (citing *Paul v. Haley*, 183 A.D.2d 44, 52 (2d Dep't 1992)). With regards to contracts, Defendant adds that an idea which is general knowledge is incapable of being adequate consideration. *See id.* Defendant points to the similarities between Plaintiff's business plans and the plans in Plaintiff's 2008 patents as evidence that his idea lacked novelty. *See id.* at 21. Further, Defendant states that Plaintiff's operation of auctionPal disclosed the business operation. *Id.* Finally, Defendant argues that Plaintiff's initial email transmission amounted to Plaintiff "blurting out" his idea, thereby nullifying the novelty before an agreement could be reached. *Id.* at 22-23. Defendant briefly raises similar arguments for why the consideration is invalid under California law. *See id.* at 28-29. In response, Plaintiff argues that there is adequate consideration because under New York law, the only novelty required is subjective novelty for the buyer. *See* Dkt. No. 18 at 15.

Under New York law, "[c]onsideration is found where there is either a benefit to the [buyer] or a detriment to the [seller]." *Matter of Ball (SFX Broadcasting Inc.)*, 236 A.D.2d 158,

7

161 (3d Dep't 1996) (citing *Weiner v. McGraw-Hill*, 57 N.Y.2d 458, 464 (1982)).  Absent fraud or unconscionability, the existence of consideration is demonstrative of adequate consideration. *In re 37-02 Plaza LLC*, 387 B.R. 413, 418 (Bankr. E.D.N.Y. 2008) (citation omitted).  "The fact that the seller may not have had a property right in what they sold does not, by itself, render the contract void for lack of consideration." *Apfel v. Prudential-Bache Securities, Inc.*, 81 N.Y.2d 470, 476 (1993) (citations omitted).  Disclosing an idea can be sufficient consideration.  *See id.* at 478.  The disclosure can be consideration even when the idea is not absolutely novel or is in the public domain so long as the idea is novel to the party receiving the disclosure.  *See Nadel v. Play-by-Play Toys & Novelties, Inc.*, 208 F.3d 368, 376 (2d Cir. 2000) (citing *Apfel*, 81 N.Y.2d at 476-77).  Thus absolute novelty is not required in contract-based actions centered on an improper use of an idea.  *Id.* at 378 (distinguishing contract-based claims from misappropriation-based claims by noting that "the law of property does not protect against the misappropriation or theft of that which is free and available to all").

"Novelty is determined through a fact-specific inquiry as to whether the idea is novel to the recipient of that idea." *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 726 F. Supp. 2d 291, 300 (S.D.N.Y. 2010) (citing *Nadel*, 208 F.3d at 380).  A court can grant a motion to dismiss on the issue of novelty if the idea is facially not novel.  *See Sharp v. Patterson*, No. 03 Civ. 8772, 2004 WL 2480426, *9 (S.D.N.Y. Nov. 3, 2004) (holding that an "idea to write a novel revolving around a series of love letters is neither novel nor original").[1]

---

[1] California law applies the same rule for novelty.  Under California law, even a widely known idea will be protected so long as the disclosure substantially benefits the person to whom it is disclosed.  *See Desny v. Wilder*, 46 Cal.2d 715, 733 (1956); *see also Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620, 629 (9th Cir. 2010) (holding that "novelty is not required for an implied-in-fact contract claim arising out of unauthorized use [of an idea]").

8

Here, the complaint plausibly alleges that the ideas in the business plan were novel to Defendant. First, the complaint states that at the time of the disclosure, Defendant's auction site did not provide an auction valet service. Second, the email exchange between Plaintiff and Dalton suggests that the idea was, at the very least, new to Dalton. Defendant's claim that Plaintiff's business plan was already available to the public due to his operation of the business also holds no water. This information was publicly available, but not necessarily generally known. The fact that one of Defendant's managers, who was working on developing relationships with sellers, found the plan compelling suggests that Defendant did not know of the idea prior to Plaintiff disclosing it. Additionally, Plaintiff has alleged that the information provided to Defendant was distinct and more advanced than any information that was publicly available.

Finally, Defendant's assertion that Plaintiff's email amounts to a "blurting out" of his idea is simply not an accurate interpretation of the complaint. The complaint includes allegations that Plaintiff and Defendant's agents had conversations making Defendant's use of the business plan conditional on Plaintiff being compensated as a consultant prior to the email, which forecloses a blurting-out defense at this stage of the proceeding.

### *2. Mutual Assent*

Defendant also argues that because there was no agreement as to compensation after the disclosure, there was no assent to consummate the bargain.

A contract may be express or implied. *See* 1 Samuel Williston & Richard A. Lord, Williston on Contract, § 1:5 (4th ed. 2017). A contract implied in fact may result as an inference from the facts and circumstances of the case, although not formally stated in words, and is derived from the "presumed 'intention of the parties as indicated by their conduct.'" *Leibowitz v. Cornell University*, 584 F.3d 487, 506-07 (2d Cir. 2009) (quoting *Jemzura v. Jemzura*, 36 N.Y.2d 496,

9

503-04 (1975)). An implied contract has the same binding authority as an express contract, so long as the implied contract satisfies the required "'elements [of] consideration, mutual assent, legal capacity and legal subject matter.'" *Id.* at 507 (quoting *Maas v. Cornell Univ.*, 94 N.Y.2d 87, 94 (1999)); *see also Brown v. St. Paul Travelers Co., Inc.*, 331 Fed. Appx. 68, 70 (2d Cir. 2009) (holding that an implied contract "'is just as binding as an express contract arising from declared intention, since in the law there is no distinction between agreements made by words and those made by conduct'") (quoting *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 582 (2d Cir. 2006)).

To form a contract, there must be an objective meeting of the minds and a manifestation of mutual assent "'sufficiently definite to assure that the parties are truly in agreement with respect to all material terms.'" *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 95 (2d Cir. 2007) (quoting *Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp.*, 93 N.Y.2d 584, 589 (1999)). "[A] mere agreement to agree, in which a material term is left for future negotiations, is unenforceable." *Tractebel Energy Mktg.*, 487 F.3d at 95 (citation omitted). Price and compensation are examples of material terms that require definiteness. *See Major League Baseball Props., Inc. v. Opening Day Prods., Inc.*, 385 F. Supp. 2d 256, 271 (S.D.N.Y. 2005) (citation omitted).

Mutual assent is satisfied for an implied-in-fact contract if the parties negotiate for the conveyance of an idea and the idea is "thereafter taken and made valueless for its owner." *Robbins v. Frank Cooper Assoc.*, 14 N.Y.2d 913, 915 (1964) (citations omitted). Specific terms may not be required to establish mutual assent where the parties engage in predisclosure negotiations. *See Forest Park Pictures v. Universal TV Network, Inc.*, 683 F.3d 424, 433-34 (2d Cir. 2012); *see also Lapine v. Seinfeld*, 918 N.Y.S.2d 313, 319 (N.Y. Sup. Ct. 2011) (noting "that

10

where the defendant took the plaintiff's property under circumstances in which the parties negotiated for the conveyance of the property and intended payment for its use, but did not reach agreement upon the terms, the defendant was obligated to pay plaintiff its reasonable value").[2]

Here, the complaint alleges that, prior to disclosure, Plaintiff and Dalton negotiated that Defendant would not use the West Plan without giving Plaintiff a financial benefit through employment or compensation. Because there is no requirement that the parties agree to specific terms after the disclosure to satisfy mutual assent in this situation, the complaint includes sufficient specific factual allegations to plausibly allege that the parties mutually assented to the implied-in-fact contract.

Based on the foregoing, the Court finds that Plaintiff has plausibly alleged a claim of breach of contract and Defendant's motion to dismiss as to this claim is denied.

**D.  Unfair Competition: Misappropriation of Idea**

Plaintiff voluntarily withdraws this claim. *See* Dkt. No. 18 at 9 n.1.

**E.  Unfair Competition: Misappropriation of Labor, Skill & Expenditure**

"To properly assert this claim, which is a subset of New York's unfair competition law, a plaintiff must allege that a defendant misappropriated plaintiff's labor, skills, expenditures or

---

[2] There is no conflict between California and New York law for this claim. The Second Circuit acknowledged in *Forest Park* that, in the absence of any predisclosure negotiations, the New York standard for determining whether mutual assent is satisfied without specific terms is unclear. *See Forest Park Pictures*, 683 F.3d at 433–34 (comparing *Nadel*, 208 F.3d at 376 n.5 (noting that implied assent can be inferred without price) *with Lapine*, 31 Misc. 3d at 318 (noting "price is an essential element of a contract")). In these situations a conflicts analysis is required as New York law is unsettled. *Id.* However, *Lapine* explicitly notes that specific terms are not essential when the parties engaged in predisclosure negotiations. *Lapine*, 918 N.Y.S.2d at 319. Thus, where the parties engage in a predisclosure negotiation, New York and California have identical standards for breach of contract arising from the disclosure of an idea. *See Forest Park*, 683 F.3d at 433-34; *supra* note 1.

good will, and displayed some element of bad faith in doing so." *Schroeder*, 133 A.D.3d at 30 (citations omitted).

Defendant argues that the misappropriation of labor, skill, and expenditure claim fails because the idea was not novel. Further, because it was in the public domain, the taking of it could not constitute bad faith. *See* Dkt. No. 17-1 at 25-26. Both of these arguments can be addressed together as they both depend upon novelty.

Under New York law, "the tort of unfair competition is a 'broad and flexible doctrine' that has been described as 'encompassing any form of commercial immorality, or simply as endeavoring to reap where one has not sown; it is taking the skill, expenditures and labors of a competitor, and misappropriating for the commercial advantage of one person a benefit or property right belonging to another.'" *Big Vision Private Ltd. v. E.I. du Pont de Nemours & Co.*, 610 Fed. Appx. 69, 70 (2d Cir. 2015) (quoting *Roy Export Co. Establishment of Vaduz, Liechtenstein v. Columbia Broad. Sys., Inc.*, 672 F.2d 1095, 1105 (2d Cir. 1982)); *see also Saratoga Vichy Spring Co., Inc. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980); *ESPN, Inc. v. Quiksilver, Inc.*, 586 F. Supp. 2d 219, 230 (S.D.N.Y. 2008). Such a claim requires a showing of bad faith. *See Big Vision*, 610 Fed. Appx. at 70.

"A claim of unfair competition does not necessarily require a showing of misappropriation of a trade secret or commercially novel idea that is produced by one party." *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 726 F. Supp. 2d 291, 302 (S.D.N.Y. 2010) (citing *Telecom Int'l Am., Ltd. v. AT & T Corp.*, 280 F.3d 175, 197-98 (2d Cir. 2001)). "The doctrine of unfair competition may apply in cases involving the misappropriation of a party's business-related labors and expenditures themselves — that is, the misappropriation of a party's work product." *Id.* (citations omitted); *see also Milton Abeles, Inc. v. Farmers Pride, Inc.*, 603 F. Supp. 2d 500, 503 (E.D.N.Y.

12

2009) (noting that misappropriation of information that is the product of "significant labor, skill, and money ... may give rise to a claim of unfair competition"); *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 209 (S.D.N.Y. 2008) (explaining that a claim of unfair competition may be based on the misappropriation of business strategies, internal company documents, and client lists); *Sit-Up Ltd. v. IAC/InterActiveCorp.*, No. 05 Civ. 9292, 2008 WL 463884, *19-21 (S.D.N.Y. Feb. 20, 2008) (dismissing misappropriation of idea claim on the ground that the idea was not novel but denying motion to dismiss claim for misappropriation of labors and expenditures with respect to defendants' alleged misuse of business materials generated by the plaintiffs); *Robotic Vision Systems, Inc. v. General Scanning. Inc.*, No. 96–CV–3884, 1997 WL 1068696, *5 (E.D.N.Y. Sept. 8, 1997) (denying the defendant's motion for summary judgment where the plaintiff technology company alleged that it invested labor, skill and money in researching and developing a bid strategy for merging with a target company; a competing technology company misappropriated that information by fraudulently inducing the CEO of the plaintiff company to divulge its plan for the merger and that the defendant company then put the fruits of plaintiff's efforts to use for its own benefit).

In the present matter, contrary to Defendant's assertions, the Court finds that Plaintiff has alleged a plausible claim of unfair competition as it relates to the misappropriation of labor, skills, and expenditures of another. The complaint alleges that Defendant misappropriated Plaintiff's work product. Specifically, the complaint alleges that Plaintiff expended approximately thirteen years and was involved with the deployment of approximately $3,000,000.00 in investment capital to develop the unique, internal processes in the West Plan. *See* Dkt. No. 2 at ¶ 83. Plaintiff claims that the internal processes were unique and novel, "as there were no other entities (including Defendant) utilizing the Mobile Device Process or the Spoke and Hub Model in the

virtual market place." *Id.* at ¶ 85. Further, Plaintiff disclosed the West Plan and variations thereof to Defendant in confidence, and only after being assured that it would be kept confidential absent Plaintiff's involvement and financial compensation in any project using the disclosed information. *See id.* at ¶ 86. Finally, the complaint alleges the bad-faith misappropriation of Plaintiff's labor, skill and expenditures. *See id.* at ¶ 88.

In seeking the dismissal of this claim, Defendant relies solely on the argument that lack of novelty is fatal to this claim. *See* Dkt. No. 17-1 at 25. Although Defendant is correct that lack of novelty is fatal to a claim of idea misappropriation, as discussed above, novelty is not required to establish a claim of unfair competition based on the misappropriation of labor, skill and expenditures. *See Sokol Holdings, Inc.*, 726 F. Supp. 2d at 302; *Milton Abeles, Inc.*, 603 F. Supp. 2d at 503; *Berman*, 580 F. Supp. 2d at 209; *Sit-Up Ltd.*, 2008 WL 463884, \*19-21. This holding is consistent with the fact that "New York courts have noted the 'incalculable variety' of illegal practices falling within the unfair competition rubric . . . calling it a 'broad and flexible doctrine." *Roy Export Co.*, 672 F.2d at 1105.

Based on the foregoing, the Court finds that Plaintiff has plausibly alleged a claim of misappropriation of skill, labor, and expenditure and Defendant's motion to dismiss as to this claim is denied.

F.   **Promissory Estoppel**

"A cause of action for promissory estoppel under New York law requires the plaintiff to prove three elements: 1) a clear and unambiguous promise; 2) reasonable and foreseeable reliance on that promise; and 3) injury to the relying party as a result of the reliance." *Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir. 2000) (citation omitted). "However, a detailed showing of the elements of promissory estoppel need not be shown to survive a pre-answer motion to dismiss."

14

*Mendez v. Bank of Am. Home Loans Servicing, LP*, 840 F. Supp. 2d 639, 654 (E.D.N.Y. 2012) (quotation omitted).

Defendant's first argument is that there was no reliance because Defendant did not make a promise prior to the disclosure so Plaintiff was not induced into disclosing the business plan. *See* Dkt. No. 17-1 at 26. However, the complaint explicitly states that "Dalton promised to keep any disclosed business plan in confidence and that it would not be acted upon without [Plaintiff's] financial involvement or approval. In reliance on Dalton's express promise, [Plaintiff] provided the West Valet Plan to Dalton." Dkt. No. 2 at ¶¶ 29-31. Thus, Defendant's first argument is without merit.

Defendant then argues that any promise made was not sufficiently clear and unambiguous to support a promissory estoppel claim. Dkt. No. 17-1 at 26. Defendant argues that under *James v. W.N.Y. Computing Sys., Inc.*, 273 A.D.2d 853, 855 (4th Dep't 2000), *overruled on other grounds by Am. Tower Asset Sub, LLC v. Buffalo-Lake Erie Wireless Sys. Co., LLC*, 104 A.D.3d 1212 (4th Dep't 2013), when an "agreement is unclear concerning the duration of [the] plaintiff's employment, the specific of the plan in which the plaintiff is to participate, what plaintiff's 'opportunity' entails, or the amount of money [the] plaintiff would receive[,]" it cannot support a claim arising from promissory estoppel. The Court disagrees.

The promissory estoppel claim in *James* arose out of an employment compensation dispute where the employer substantially reduced the plaintiff's commission. *See id.* at 854. The employer told James that his future profits from the already existing company stock option plan would more than offset the reduction in his commission. *See id.* Two years later, the employer ended the stock option plan before James had a chance to fully invest. *See id.* James claimed that, under promissory estoppel, he was entitled to relief because the options program had induced

15

him to stay at his job. *See id.* The court held that the oral statements implying James would receive more compensation under the options program were not clear and unambiguous and dismissed the claim. *See id.* at 855. The court noted that the oral agreement was "unclear concerning the duration of [James's] employment, the specifics of the plan in which [James was] to participate, what [James's] 'opportunity' entail[ed], or the amount of money [James] would receive from the stock." *Id.* These details were needed because of countervailing evidence within the complaint that weighed against the existence of a promise. Specifically, the stock option plan included language that it would "not be deemed to constitute a contract . . . or . . . inducement to . . . the employment of any person." *Id.* at 854. This statement that the option plan was not a promise ran counter to James's assertions. *See id.* at 855. Thus, the broad statements of the alleged promise could not be unambiguous when viewed in conjunction with the contrary language in the options plan. *See id.* Here, unlike *James*, there is nothing in the complaint to imply a mixed message. Thus, there is no need for additional specifics, as there is no ambiguity to refute.

Instead, this case is more akin to *Clifford R. Gray, Inc. v. LeChase Constr. Servs., LLC*, 31 A.D.3d 983 (3d Dep't 2006). In *Clifford*, the "defendants promised to give [the] plaintiff [a] project subcontract" on the condition that the "plaintiff refrained from working with other general contractors who were seeking the project." *Id.* at 987. After the plaintiff relied on that promise, the defendant refused to perform. *See id.* The court allowed the plaintiff to proceed with a promissory estoppel claim even though "the parties never fully agreed on the details of [the] subcontract and agreed only that the outstanding details of the subcontract would be discussed if [the] defendants were ultimately awarded the . . . contract." *Id.* at 984. These ambiguities were

16

immaterial because the promise of future employment in consideration for his forbearance was the promise that the plaintiff reasonably relied on. *See id.* at 987.

Similarly, the complaint here alleges that Defendant promised to compensate Plaintiff if Defendant implemented the West Plan. Like the plaintiff in *Clifford*, Plaintiff alleges that he relied on Defendant's promise, even though the parties did not establish the terms of the future contract. As in *Clifford*, this promise was sufficiently specific to reasonably induce Plaintiff's reliance. Thus, the facts put forward in the complaint plausibly allege a clear and unambiguous promise.

Finally, Defendant argues that, because of Plaintiff's previous operation of auctionPAL and the "blurting" out his business plan via email, the plan was free for all to use so Defendant's use of his plan caused him no injury.

First, the Court notes again that Plaintiff's complaint includes allegations of an agreement prior to his disclosure, thereby refuting the "blurting" argument. Second, even assuming that any disclosure in Plaintiff's previous patent applications or website operation were sufficient to destroy the value in the information disclosed, the complaint alleges that the West Plan included a proprietary, custom question database and market research on the best starting price and optimal time for listing an item on an online marketplace.

Based on the foregoing, the Court finds that Plaintiff has plausibly alleged a claim of promissory estoppel and Defendant's motion to dismiss as to this claim is denied.

**G.  Unjust Enrichment**

"To prevail on a claim for unjust enrichment, the moving party must show that the defendant received money from or was otherwise enriched by the plaintiff to the defendant's benefit and, pursuant to principles of equity and good conscience, the defendant should not retain

what plaintiff seeks to recover." *Deutsche Asset Mgmt., Inc. v. Callaghan*, No. 01 Civ. 4426, 2004 WL 758303, *11 (S.D.N.Y. Apr. 7, 2004) (citing, *inter alia*, *Clark v. Daby*, 300 A.D.2d 732 (3d Dep't 2002)).  "[C]laims for unjust enrichment seek restitution and are based upon theories of quasi-contract." *Id.* (citing *Matter of Estate of Witbeck*, 245 A.D.2d 848 (3d Dep't 1997)).  "A quasi-contract is one implied by law, where none in fact exists." *Id.* (citing *James v. State*, 90 A.D.2d 342 (4th Dep't 1982)).  Thus, quasi-contract relief is only available in the absence of an enforceable written contract which governs the same subject matter between the parties.  *See Seiden Associates, Inc. v. ANC Holdings*, 754 F. Supp. 37, 39 (S.D.N.Y. 1991).

Defendant argues that Plaintiff's claim of unjust enrichment fails because the business plan was not novel.  *See* Dkt. No. 17-1.  Defendant cites to *Sokol Holdings*, which states that where unjust enrichment is "premised on a plaintiff's submission of an idea to a defendant, the plaintiff must demonstrate the novelty of the idea in order to recover." *Sokol Holdings*, 726 F. Supp. 2d at 304.

The Second Circuit is clear that unjust enrichment applies a contracts based analysis of novelty.  *See Khreativity Unlimited, Inc. v. Mattel, Inc.*, 242 F.3d 366 (2d Cir. 2000) (holding that an "idea must be novel to its recipient for the recipient to be unjustly enriched thereby").  Further, in the *Sokol Holdings* case cited by Defendant, the court did not conduct a separate novelty analysis for unjust enrichment.  *See Sokol Holdings*, 726 F. Supp. 2d at 304.  Instead, the court referenced its novelty analysis for a breach of contract claim where it noted that the standard is not absolute novelty, but "whether the idea is novel to the *recipient* of that idea." *Id.* at 300, 304; *see also Khreativity Unlimited v. Mattel, Inc.*, 101 F. Supp. 2d 177, 184-85 (S.D.N.Y. 2000) (analyzing a stand alone unjust enrichment claim using the novelty to the buyer standard from contracts).

18

Based on the foregoing, the Court finds that Plaintiff has plausibly alleged a claim of unjust enrichment and Defendant's motion to dismiss as to this claim is denied.

## IV. CONCLUSION

After carefully reviewing the complaint in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion to dismiss is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: December 1, 2017
      Albany, New York

Mae A. D'Agostino
U.S. District Judge